**MONTANA PUBLIC INTEREST RESEARCH GROUP; Montana Wildlife Federation; Initiative and Referendum Institute; Verner Bertelsen; Richard Sargent; Tom Shellenberg; and Robert Shepard, Plaintiffs,**

v.

**Brad JOHNSON,[1] in his official capacity as Secretary of State for the State of Montana; and Mike McGrath, in his official capacity as Attorney General for the State of Montana, Defendants.**

No. CV 03–183–M–DWM.

United States District Court, D. Montana, Missoula Division.

March 28, 2005.

---

1. Plaintiffs' Complaint named Bob Brown as a Defendant in his official capacity as Secretary of State for the State of Montana. Bob Brown has since been succeeded as Secretary of State by Brad Johnson. The Court therefore substitutes Brad Johnson for Bob Brown pursuant to Rule 21, Fed.R.Civ.P.

Timothy A. Bechtold, Rossbach Hart Bechtold, Missoula, MT, Paul Grant, Engelwood, CO, for Plaintiffs.

Candace F. West, Michael McGrath, Office of the Montana Attorney General, Helena, MT, for Defendants.

## ORDER

MOLLOY, District Judge.

### I. Introduction

Plaintiffs Montana Public Interest Research Group, Montana Wildlife Federation, Initiative and Referendum Institute, Verner Bertlesen, Richard Sargent, Tom Shellenberg, and Robert Shepard ("Plaintiffs") filed this action pursuant to 42 U.S.C. § 1983 [2] for declaratory and injunctive relief against Montana Secretary of State Bob Brown and Montana Attorney General Mike McGrath ("Montana"), alleging that Montana's recently adopted ballot access rules for voter-initiated legislation violate the First and Fourteenth Amendments of the United States Constitution. Plaintiffs are groups and individuals who have historically been actively involved in initiative and referendum processes in Montana.

Plaintiffs claim Montana's requirement that a proposed initiative be supported by the signatures of at least five percent of the qualified voters in at least half of Montana's counties violates the First Amendment rights of petition circulators and violates the rights of individual voters to equal protection of the law as guaranteed by the Fourteenth Amendment. Plaintiffs also challenge a separate provision requiring supporters of a proposed initiative to disclose the identities of paid signature gatherers employed in support of the proposed initiative. The disclosure requirement, Plaintiffs argue, violates the First Amendment because it places an impermissible burden on free speech by chilling political activity protected by the Constitution.

Pending before the Court are the Plaintiffs' motion for summary judgment on all claims and Montana's motion to conduct discovery. Montana maintains that disput-

2. Section 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983.

ed issues of material fact prevent summary judgment and that the Court must hear evidence before rendering a decision in the case. Plaintiffs counter that the challenged ballot access process is unconstitutional on its face and therefore no discovery is needed.

In my view, Montana's law challenged in the first four counts of the Complaint is unconstitutional. Whether the reporting requirements questioned in the fifth count chill initiative proponents from exercising their First Amendment rights is disputed factually, so it is not subject to summary disposition.

## II. Factual Background

Montana, like many of her sister states, allows direct legislation through ballot initiatives. The citizens of Montana have constitutionally reserved to themselves the powers of initiative and referendum. Mont. Const. art. III, §§ 4, 5 & 14. The Montana statutes create a scheme for implementing those retained powers, including provisions regulating the collection of signatures, the qualification of initiative and referendum measures, and the submission of qualified measures to the voters for approval or rejection. Mont.Code Ann. §§ 13–27–201, *et seq.*

In 2002, Montana voters approved an amendment to the Montana Constitution adding county distribution requirements to the initiative qualification process. Following those changes, which took effect in 2003, the relevant sections of the Montana Constitution read in part as follows:

### Section 4. Initiative

(1) The people may enact laws by initiative on all matters except appropriations of money and local or special laws.

(2) Initiative petitions must contain the full text of the proposed measure, shall be signed by at least five percent of the qualified electors in each of at least one-half of the counties and the total number of signers must be at least five percent of the total qualified electors of the state. Petitions shall be filed with the secretary of state at least three months prior to the election at which the measure will be voted upon.

Mont. Const. art. III § 4.

### Section 9. Amendment by Initiative

(1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state. That number shall include at least ten percent of the qualified electors in each of at least one-half of the counties.

(2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next regular state-wide election.

Mont. Const. art. XIV, § 9.

The county distribution requirement is also reflected in the statutes implementing the constitutional provisions cited above. Montana Code Annotated § 13–27–204 provides, in pertinent part:

### Petition for initiative

(1) The following is substantially the form for a petition calling for a vote to enact a law by initiative:

PETITION TO PLACE INITIATIVE NO. _____ ON THE ELECTION BALLOT

(a) If 5% of the voters in each of one-half of the counties sign this petition and

the total number of voters signing this petition is ____, this measure will appear on the next general election ballot. If a majority of voters vote for this measure at that election, it will become law.

(b) We, the undersigned Montana voters, propose that the secretary of state place the following measure on the ____, 20 ____, general election ballot:

(Title of measure written pursuant to 13–27–312) (Statement of implication written pursuant to 13–27–312)

Montana Code Annotated § 13–27–207 provides, in pertinent part:

**Petition for initiative for constitutional amendment**

(1) The following is substantially the form for a petition for an initiative to amend the constitution:

PETITION TO PLACE CONSTITUTIONAL AMENDMENT NO. ____ ON THE ELECTION BALLOT

(a) If 10% of the voters in each of one-half of the counties sign this petition and the total number of voters signing the petition is ____, this constitutional amendment will appear on the next general election ballot. If a majority of voters vote for this amendment at that election, it will become part of the constitution.

(b) We, the undersigned Montana voters, propose that the secretary of state place the following constitutional amendment on the ____, 20 ____, general election ballot:

(Title of the proposed constitutional amendment written pursuant to 13–27–312) (Statement of implication written pursuant to 13–27–312)

Montana's population is unevenly distributed throughout its counties. While the space and density of our state has well-recognized benefits to those who live in "the last best place," its geographic distribution favors residents of sparsely populated areas over residents of the more urban or densely populated areas of the state when it comes to qualifying initiatives for the ballot. According to 2000 census figures, nearly 56 percent of Montana's population is concentrated in six of the state's 56 counties. Under the new county distribution requirement, far fewer signatures are needed to qualify an initiative in a less populous county than are necessary in more populous counties.

Plaintiffs' Counts One, Two, Three and Four are challenges to the constitutional validity of Mont. Const. art. III § 4, Mont. Const. art. XIV, § 9, § 13–27–204, Mont.Code Ann., and § 13–27–207, Mont. Code Ann., respectively (collectively referred to hereinafter as "the county distribution requirement").

There is also an issue here with Montana's reporting requirements. Montana statutes contain the following provisions about reporting contributions and expenditures by candidates and political committees:

**Required reports—time and manner of reporting—exceptions-penalty.**

(1) Except as provided in this section, a person who employs a paid signature gatherer shall file with the commissioner reports containing those matters required by Title 13, chapter 37, part 2, for a political committee organized to support or oppose a ballot issue or for an independent committee that receives contributions and makes expenditures in connection with a ballot issue, as applicable. If a person who employs a paid signature gatherer is required by Title

13, chapter 37, part 2, to file a report pursuant to those provisions, the person need not file a duplicate report pursuant to this section, but shall report the matter required by subsection (2) as part of that report. As used in this section, "a person who employs a paid signature gatherer" means a political party, political committee, or other person seeking to place a ballot issue before the electors and does not mean an individual who is part of the same signature gathering company, partnership, or other business organization that directly hires, supervises, and pays an individual who is a signature gatherer.

(2) The reports required by subsection (1) must include the amount paid to a paid signature gatherer.

§ 13–27–112, Mont.Code Ann.

**Reports of contributions and expenditures required.**

(1) Except as provided in 13–37–206, each candidate and political committee shall file periodic reports of contributions and expenditures made by or on the behalf of a candidate or political committee. All reports required by this chapter shall be filed with the commissioner and with the election administrator of the county in which a candidate is a resident or the political committee has its headquarters. However, where residency within a district, county, city, or town is not a prerequisite for being a candidate, copies of all reports shall be filed with the election administrator of the county in which the election is to be held or, if the election is to be held in more than one county, with the election administrator in the county that the commissioner specifies.

§ 13–37–225, Mont.Code Ann.

**Disclosure of expenditures made.**

Each report required by this chapter shall disclose the following information, except that a candidate shall only be required to report the information specified in this section if the transactions involved were undertaken for the purpose of influencing an election:

(1) the full name and mailing address (occupation and the principal place of business, if any) of each person to whom expenditures have been made by the committee or candidate during the reporting period, including the amount, date, and purpose of each expenditure and the total amount of expenditures made to each person;

(2) the full name and mailing addresses (occupation and the principal place of business, if any) of each person to whom an expenditure for personal services, salaries, and reimbursed expenses have been made, including the amount, date, and purpose of that expenditure and the total amount of expenditures made to each person;

§ 13–37–230, Mont.Code Ann.

Count Five of the Complaint alleges that these statutory measures (§§ 13–27–112, 13–37–225, & 13–37–230, Mont.Code Ann., hereinafter collectively referred to as "the disclosure requirement") combine to empower Montana to compel the public identification of paid signature gatherers, requiring paid signature gatherers to sacrifice the immunity enjoyed by volunteer petitioners. Such measures, according to the Plaintiffs, inhibit and chill the First Amendment activities of Plaintiffs and other petition gatherers.

### III. Analysis

**A. Summary Judgment Standards**

A party moving for summary judgment must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party is entitled to summary judgment

where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 252, 106 S.Ct. 2505.

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine. In other words, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–252, 106 S.Ct. 2505. The *Anderson* Court instructs that at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. 477 U.S. at 249–50, 106 S.Ct. 2505. However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.*

**B. The County Distribution Requirement**

**1. Montana's Motion to Conduct Discovery**

Montana urges the Court to allow the parties to conduct discovery prior to considering the Plaintiffs' motion for summary judgment, arguing that there exist genuine issues of material fact regarding the degree to which the county distribution requirement hinders the Plaintiffs' right to petition the government for redress of grievances. Assuming the State is correct that the Court lacks sufficient evidence upon which to conclude that no genuine issues of material fact exist with regard to the county distribution requirement's effect on the First Amendment rights of petition circulators, that assumption does not resolve the legal impediments to the argument. Montana does not address Plaintiffs' alternate ground for challenging the constitutionality of the county distribution requirement, *i.e.*, that the requirement grants undue weight to the signatures of qualified electors in less populous counties to the disadvantage of qualified electors in more populous counties. That argument, based on the Fourteenth Amendment's Equal Protection Clause, presents a facial challenge to the county distribution requirement. I find it is legally well taken, and dispositive.

The State has not attempted to argue that discovery is needed prior to deciding the Plaintiffs' Equal Protection challenge, and as explained below, Plaintiffs' claims regarding the constitutionality of the county distribution requirement can be resolved on the basis of Plaintiffs' Equal Protection arguments. It is unnecessary to reach Plaintiffs' First Amendment challenge, for which the State insists discovery is required. For that reason, I will consider the Plaintiffs' motion for summary judgment on Counts One through Four (the county distribution requirement) and deny Montana's motion to conduct discovery on those claims.

**2. Plaintiffs' Equal Protection Challenge to the County Distribution Requirement**

The questions presented in the Plaintiffs' challenge to the county distribution

requirement are controlled by the recent case *Idaho Coalition United for Bears v. Cenarrussa*, 342 F.3d 1073 (9th Cir.2003). There, the Ninth Circuit Court of Appeals held unconstitutional a county distribution requirement for the qualification of voter-initiated legislation virtually indistinguishable from the one currently in effect in Montana.

The Idaho system required that a proponent of a proposed initiative obtain the signatures of at least six percent of the qualified electors in the state, including at least six percent of the qualified electors in at least half of Idaho's 44 counties. *Idaho Coalition*, 342 F.3d at 1075. The Court of Appeals found that Idaho's population, like Montana's, is unevenly distributed among its counties, with 60 percent of the state's population residing in nine of its 44 counties. *Id.* A coalition of plaintiffs sued Idaho's secretary of state, arguing that the distribution requirement violated the Equal Protection Clause by giving preferential treatment to residents of sparsely populated counties. The district court granted summary judgment in favor of the plaintiffs. *Id.*

In upholding the lower court's decision, the Ninth Circuit wrote that "[t]he ballot initiative, like the election of public officials, is a basic instrument of democratic government, and is therefore subject to equal protection guarantees. Those guarantees furthermore apply to ballot access restrictions just as they do elections themselves." 342 F.3d at 1076 (citations, internal quotation marks omitted). The court held that state laws providing for unequal treatment of ballot access petition signatures must be reviewed with strict scrutiny, *Id.* at 1077 (citing *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)), and found Idaho's system unconstitutional under that standard.

Because some of Idaho's counties are far more heavily populated than others, an initiative that is popular primarily with voters in sparsely populated counties can reach the ballot with the support of many fewer voters than can an initiative that is popular primarily with voters in densely populated counties. Like the county unit system in *Sanders*, the Idaho system violates equal protection because the few voters in a sparsely populated county have a power equal to the vastly larger number of voters who reside in a populous county. In short, an electoral system, here the system governing the people's right to place initiative measures on the ballot, may not be based on treating unequal counties equally and making the electoral determination dependent on the support of numbers of counties rather than numbers of people.

342 F.3d at 1078.

Montana's county distribution requirement is structurally identical to the one found unconstitutional in *Idaho Coalition*. The inconsequential differences between the two are (1) that Montana requires only five percent of qualified voters in half of the counties to sign while Idaho required six percent, and (2) that a minimum of qualified electors must sign in 28 of Montana's counties, as opposed to 22 of Idaho's counties. The State has not advanced any principled argument as to why those minor differences should have an impact on the constitutional analysis that must be applied. The challenged Montana constitutional and statutory provisions violate the Equal Protection Clause of the Fourteenth Amendment because they allocate equal power to counties of unequal population.

Montana argues that the *Idaho Coalition* case is not on point. According to the

State, the case at issue here is controlled by *Green v. City of Tucson*, 340 F.3d 891 (9th Cir.2003). The *Green* case, decided 19 days before *Idaho Coalition*, dealt with a constitutional challenge to a state statute making municipal incorporation of a territory dependent on the consent of nearby municipalities. 340 F.3d at 894. The challenged Arizona law in *Green* required that a territory wishing to incorporate as a municipality obtain the petition signatures of at least two-thirds of the territory's qualified voters and the prior consent of any incorporated community or town that (1) is located within six miles of the territory and (2) has a population of 5,000 or more. *Id.* The plaintiffs, residents of a territory the incorporation of which was blocked by the non-consent of the nearby City of Tucson, filed an equal protection challenge alleging that the statute in question provided for unequal treatment of residents based on their proximity to an incorporated community. *Id.*

The *Green* court began its analysis by deciding whether equal protection guarantees extend to the municipal incorporation petition process. In doing so, the court found it necessary to determine whether the act of signing such a petition was sufficiently similar to the traditional act of voting as to warrant constitutional protection. 340 F.3d at 897–98. Drawing on its decision in *Hussey v. City of Portland*, 64 F.3d 1260 (9th Cir.1995), the Court concluded that the municipal incorporation petition process was sufficiently similar to voting to warrant constitutional safeguards. 340 F.3d at 897. The court considered the following in support of its conclusion: (1) like a vote, the municipal incorporation petition signature is an expression of the voter's will; (2) like an election, the petition process requires a majority for success; and (3) the munici-

pal incorporation petition process serves as a substitute for an election. *Id.*

■ Montana interprets *Green's* analysis as stating a test for whether the Equal Protection Clause applies to a given petition process. Montana argues that the court in *Green* held "that because the petition process is not protected by the United States Constitution, only petition processes that are the functional equivalent of a vote are subject to equal protection challenge." Def.'s Resp. Br. at 11. I think this view misreads the *Green* opinion, which was concerned with the narrow question of whether there is a constitutionally protected right to participate in the specific municipal incorporation process in place in Arizona. The "functional equivalency" analysis in *Green* was necessary because the Ninth Circuit had not yet decided whether the Equal Protection Clause applies to a municipal incorporation petition process like Arizona's. No such analysis is needed here because, as the court confirmed in *Idaho Coalition*, it has long been settled that equal protection guarantees apply to the ballot initiative, "and furthermore apply to ballot access restrictions just as they do elections themselves." 342 F.3d at 1076 (citing *Illinois State Bd. Of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)). For that reason, Montana's reliance on *Green* is misplaced.

The State argues in the alternative that because the Plaintiffs make a "vote dilution" claim, this case is controlled by the Voting Rights Act (42 U.S.C. § 1973). The Voting Rights Act prohibits voting practices that result in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color or membership in a language minority group. *See* 42 U.S.C. §§ 1973(a),

1973b(f)(2). The Plaintiffs in this case do not allege discrimination on any of the bases prohibited by the Voting Rights Act, so Montana is incorrect in arguing that Plaintiffs are only entitled to that relief which can be obtained under the Act.

Because Montana has failed to show that *Idaho Coalition* does not control this case, I am compelled to impose a strict scrutiny review of the county distribution requirement, as dictated by *Idaho Coalition*, in determining whether Montana's initiative law is unconstitutional. To withstand review under strict scrutiny, a statute must be narrowly tailored to serve a compelling governmental interest. *See, e.g., Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627–28, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

■ Montana puts forth two justifications for the county distribution requirement. First, it posits that the requirement is necessary to ensure that measures that reach the general election ballot have a modicum of statewide support. The *Idaho Coalition* court considered and rejected the argument that a county distribution requirement is necessary to protect the statewide electorate from localized legislation. Even if such an argument were correct, the court noted, a county distribution requirement fails the narrow tailoring test. 342 F.3d at 1078. This is because the same end can be achieved through the implementation of a geographic distribution requirement that does not violate equal protection, such as one based on existing legislative districts.[3]

The State also argues that a county distribution requirement serves the governmental interest of preventing frivolous and unsupported measures from crowding the ballot and creating confusion at election time. The *Idaho Coalition* court addressed that argument as well, and again found it lacking on the narrow tailoring prong. Assuming the proffered objective is a valid one, it can be achieved through measures that do not impermissibly discriminate among voters, such an as increase in the statewide percentage of signatures required to any percentage Montana deems necessary. *See Idaho Coalition*, 342 F.3d at 1079.

Montana's county distribution requirement results in unequal treatment of qualified electors in different counties and therefore is subject to strict scrutiny. Because the process is not narrowly tailored to serve a compelling governmental interest, it is unconstitutional on its face under the Fourteenth Amendment's Equal Protection Clause and therefore invalid. This means summary judgment in favor of the Plaintiffs on Counts One through Four of the Complaint. Judgment will be entered (1) declaring that the Montana constitutional and statutory provisions comprising the county distribution requirement violate the Fourteenth Amendment of the United States Constitution; and (2) permanently enjoining Montana from enforcing those provisions.[4] As noted above, Montana's motion to conduct discovery is denied as it relates to Counts One through Four.

## C. The Disclosure Requirement

■ Plaintiffs seek a declaration on summary judgment that the Montana's

---

3. Prior to the 2003 changes, Montana's ballot access rules for initiative did impose a geographical distribution requirement based on legislative districts. *See* §§ 13–27–204, 13–27–207, Mont.Code Ann. (2001).

4. Because the county distribution requirement is unconstitutional under the Fourteenth Amendment, it is unnecessary to consider the Plaintiffs' First Amendment challenge.

statutes requiring proponents of a proposed initiative to disclose the names and addresses of paid signature gatherers have a chilling effect on the First Amendment activities of circulators and therefore are unconstitutional. Montana again argues that the Court should refrain from considering a summary judgment motion until the parties have conducted discovery. As it relates to the disclosure requirement, Montana is correct in arguing that summary judgment is inappropriate.

Rule 56 of the Federal Rules of Civil Procedure authorizes a court to grant summary judgment only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Unlike Plaintiffs' challenge to the county distribution requirement, in which there was no factual dispute as to the consequences of the system, the parties here disagree as to the effect of the disclosure requirement. Each side in this case has submitted one affidavit in support of its position. Plaintiffs offer the Declaration of David Ponder, ¶ 8 of which states that "Montana's new requirement that paid signature gatherers be identified in published reports makes it much more difficult, and more expensive, for MontPIRG to recruit signature gatherers to help qualify initiatives for the ballot." Montana cites the Affidavit of Ronda Carpenter, which states in ¶ 17,

> Although Montana has for several years required disclosure to the Office of the Commissioner of Political Practices of campaign expenses and the source of campaign income, to my knowledge it has not required that we reveal the identity of paid signature gatherers as "paid signature gatherers" ... Based on my experience reviewing other initiative reports from other campaigns, many campaigns identify paid signature gathering expenses as "contract labor" or "payroll." The latter commonly-used expense designation protects the confidentiality of paid petition circulators.

Carpenter goes on to state in ¶ 18 of her Affidavit, "None of my campaign workers has ever expressed concern about the information disclosed about the campaign expenses. I personally have no concern over the amount of information I have to disclose . . . ."

From these conflicting affidavits there appears to be some dispute as to whether Montana reads the statutes in question to require the disclosure of paid signature gatherers and, if so, whether the disclosure requirement has a chilling effect on paid signature gatherers.

The Plaintiffs urge the Court to rely on the Supreme Court's finding in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). In that case, the Supreme Court upheld a Tenth Circuit decision invalidating Colorado's requirement that initiative proponents disclose the names and addresses of paid signature gatherers. 525 U.S. at 204, 119 S.Ct. 636. Writing for the majority, Justice Ginsburg found that "[l]isting paid circulators and their income from circulation forces paid circulators to surrender the anonymity enjoyed by their volunteer counterparts; no more than tenuously related to the substantial interests disclosure serves, Colorado's reporting requirements, to the extent they target paid circulators, fail exacting scrutiny." *Id.* (citations, internal quotation marks omitted). Plaintiffs contend that *Buckley* dictates a similar result in this case.

However, the conclusions of the Supreme Court in *Buckley* were based on

factual findings made after a bench trial at the district level. The district court heard evidence and made factual determinations as to the effect of challenged provisions on the willingness of individuals to serve as paid signature gatherers, the degree to which petition circulation had become a commercialized industry in Colorado, and the extent to which increased commercialization justified more stringent regulation of the process. *See generally American Constitutional Law Foundation, Inc. v. Meyer*, 870 F.Supp. 995 (D.Colo., 1994).

No such record exists in this case, and I will not dispose of an issue on summary judgment based on the record of a different case dealing with a challenge to a different state's law. Accordingly, the Plaintiffs' motion for summary judgment on Count Five is denied because there are genuine issues of material fact. Further, Montana's motion for discovery is granted as it relates it relates to Count Five only. The Court will set a short discovery period in which the area of inquiry is confined to the reasons for and the effects of Montana's disclosure requirement. At the conclusion of discovery the Court will conduct a bench trial on the remaining issue.

## IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment (dkt. # 18) is GRANTED in part and DENIED in part, and Montana's motion to conduct discovery (dkt. # 24) is GRANTED in part and DENIED in part, as follows:

(1) Plaintiffs' motion for summary judgment is GRANTED with respect to Counts One through Four, and Montana's motion to conduct discovery is DENIED with respect to Counts One through Four.

(2) The State of Montana's county distribution requirement for the qualification of proposed ballot initiatives, as set forth in Mont. Const. art. III § 4, Mont. Const. art. XIV, § 9, §§ 13–27–204 and 13–27–207, Mont.Code Ann., violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

(3) Pursuant to 42 U.S.C. § 1983, the State of Montana is enjoined from taking any action to enforce its county distribution requirement for the qualification of proposed ballot initiatives, as set forth in Mont. Const. art. III § 4, Mont. Const. art. XIV, § 9, §§ 13–27–204 and 13–27–207, Mont.Code Ann.

(4) Plaintiffs' motion for summary judgment is DENIED with respect to Count Five, and Montana's motion to conduct discovery is GRANTED with respect to Count Five.

(5) The parties shall, in accordance with Rule 26(f), Fed.R.Civ.P., confer and attempt to agree upon a proposed schedule for discovery. Discovery will be limited to the purpose and effects of Montana's disclosure requirement. The parties shall submit their proposed Rule 26(f) discovery plan no later than April 15, 2005.