**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN CIVIL LIBERTIES
UNION OF NEVADA; SHARON BRUNE;
CARRIE RENEE CHAMBERLAIN;
KATHERINE CHAMBERLAIN;
COMMITTEE TO REGULATE AND
CONTROL MARIJUANA; DANIELLE
HALDERMAN; JENNIFER KNIGHT;
MARIJUANA POLICY PROJECT;
GUITANA LEE MATRACIA; DANIEL
WISNOSKY,
        *Plaintiffs-Appellees,*

        v.

LARRY LOMAX,
        *Defendant,*

       and

DEAN HELLER,
        *Defendant-Appellant.*

No. 04-17033

D.C. No.
CV-04-01035-
JCM/LRL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
July 26, 2006—San Francisco, California

Filed December 8, 2006

Before: Procter Hug, Jr., Andrew J. Kleinfeld, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

19287

## COUNSEL

Brian Sandoval, Attorney General, and Victoria Thimmesch Oldenburg, Senior Deputy Attorney General, Carson City, Nevada, for the defendant-appellant.

Allen Lichtenstein, ACLU of Nevada, Las Vegas, Nevada, for the plaintiffs-appellees.

Matthew D. Brinckerhoff and Sarah Netburn, Emery Celli Brinckerhoff & Abady, LLP, New York, New York, for the plaintiffs-appellees.

**OPINION**

PAEZ, Circuit Judge:

The citizens of Nevada reserved to themselves the power to legislate by initiative. NEV. Const. art. 19, § 2(1). By way of the state's petition process, Nevada citizens may place qualified initiatives, which propose to create or amend statutes, or amend the constitution, on a statewide general election ballot. *Id.* If a constitutional initiative obtains voter approval in two consecutive general elections, the initiative is adopted, and the Nevada Constitution is amended. NEV. CONST. art. 19, § 2(4).

In anticipation of the 2004 General Election, Plaintiffs[1] (collectively "the Committee") circulated a petition to place the Regulation of Marijuana Initiative ("the initiative"), a constitutional initiative, on the ballot. After the Committee submitted the petition to Defendant Dean Heller, Nevada's Secretary of State ("the Secretary"), the Secretary determined that the initiative did not qualify for the ballot because the petition failed to garner the requisite number of valid signatures. Thousands of signatures were disqualified because they did not satisfy two non-signature requirements, as contained in the Dual Affidavit and Deemed Registered Rules. As a result of these disqualifications, the Secretary determined that the initiative petition failed to comply with two signature rules—the Statewide Rule, which requires that at least 10% of Nevada's eligible voters sign the petition, and the 13 Counties Rule, which requires that the initiative proponents obtain signatures from at least 10% of the eligible voters in at least 13 of the 17 Nevada counties.

---

[1]Plaintiffs included the following parties: the American Civil Liberties Union of Nevada; Sharon Brune; Carrie Renee Chamberlain; Katherine Chamberlain; the Committee to Regulate and Control Marijuana; Danielle Halderman; Jennifer Knight; the Marijuana Policy Project; Guitana Lee Matracia; and Daniel Wisnosky.

The Committee challenged the 13 Counties, Dual Affidavit, and Deemed Registered Rules in district court, and moved for a preliminary injunction against the enforcement of these requirements. The Committee alleged that the 13 Counties Rule violated the Equal Protection Clause of the Fourteenth Amendment because it treats more favorably the votes of residents of sparsely populated counties than the votes of residents of densely populated counties, thereby diluting the votes of the latter. The court granted permanent injunctive relief with respect to the 13 Counties and Dual Affidavit Rules, only the former of which is before this court on appeal. The Secretary argues that the district court erred in enjoining enforcement of the 13 Counties Rule because the court did not undertake the requisite strict scrutiny review, the rule survives this exacting review, and the case on which the district court primarily relied does not control the present case.

The 2004 General Election has long passed, and the Committee's initiative did not appear on the ballot. Although the parties do not challenge the justiciability of this case, we initially consider two justiciability issues: standing and mootness. First, we hold that the Committee had standing to bring its constitutional challenges in federal court. Although the initiative failed to meet the Statewide Rule, which the Committee did not challenge, it would have done so had the Committee prevailed on its three challenges. The Committee's injury was therefore redressable when the Committee filed suit. Second, we hold that this case fits within the "capable of repetition, yet evading review" exception to the mootness doctrine. As in the other election cases we have decided, the challenged action here is too short in duration to enable full litigation on the merits, and there is a reasonable expectation that the Committee will again be subject to the challenged 13 Counties Rule.

Finally, we examine the merits of the Secretary's appeal, i.e. whether the 13 Counties Rule passes muster under strict scrutiny review. We agree with the district court that the 13

Counties Rule is unconstitutional. The 13 Counties Rule violates the equal protection tenet of "one person, one vote," and is not narrowly tailored. The rule is indistinguishable from a similar rule that this court struck down in *Idaho Coalition United for Bears v. Cenarrussa*, 342 F.3d 1073 (9th Cir. 2003). Accordingly, we affirm the district court's grant of a permanent injunction.

## I.   Background

During the petition cycle for Nevada's 2004 General Election, the Committee sought to place the Regulation of Marijuana Initiative on the ballot. The initiative sought to amend the Nevada Constitution to direct the state legislature to regulate the manufacture, taxation, and sale of marijuana. On February 18, 2004, the Committee filed a copy of the initiative petition with the Secretary. After it gathered 66,135 signatures in favor of the initiative, the Committee submitted the circulated petition to the various county clerks on June 14, 2004. On July 13, 2004, the Secretary announced that the initiative failed to qualify for the ballot. The Secretary concluded that the initiative did not satisfy the Statewide and 13 Counties Rules.

The 13 Counties Rule requires that "[a]n initiative petition . . . shall be proposed by a number of registered voters equal to 10 percent or more of the number of voters who voted at the last preceding general election in not less than 75 percent of the counties [or 13 of the 17 counties] in the state." NEV. CONST. art. 19, § 2(2). Because the 13 Counties Rule is not based on county population, but rather on a fixed percentage of signatures from a fixed percentage of counties, it dilutes the vote of residents of densely populated counties, such as Washoe County, which includes Reno, and Clark County, which includes Las Vegas.[2] In addition to this signature

[2]In 2004, Clark and Washoe Counties comprised approximately 87% of Nevada's population. The other 15 counties contained the remaining 13% of the population. *See* Nevada Workforce Informer, http://www.nevada workforce.com/cgi/databrowsing/?PAGEID=4&SUBID=143 (last visited November 29, 2006).

requirement, under Nevada's Statewide Rule, "the total number of registered voters signing the initiative petition shall be equal to 10 percent or more of the voters who voted in the entire state at the last preceding general election." NEV. CONST. art. 19, § 2(2). In the 2002 General Election, 513,370 people voted. Therefore, to satisfy the Statewide Rule, an initiative petition for the 2004 General Election must have contained at least 51,337 valid signatures. Because the Committee's initiative met the 10% threshold in only 12 counties, and only 34,947 of the 66,135 statewide signatures were validated, as alleged in the complaint, the Secretary concluded that it did not qualify for the ballot.

In making this determination, the Secretary, and the Clark County Election Department, invalidated thousands of signatures based on the Dual Affidavit and Deemed Registered Rules. The Dual Affidavit Rule requires that an initiative petition contain an affidavit from one of the signers averring that "all of the signatures are genuine and that each individual who signed such document was at the time of signing a registered voter in the county of his or her residence." NEV. CONST. art. 19, § 3(1). The Secretary invalidated 19,830 signatures from Clark and Washoe Counties because they did not comply with this rule. On the basis of these two counties' signature verification rates, 15,120 of these disqualified signatures would have been verified had the Dual Affidavit Rule not been enforced.

The Deemed Registered Rule establishes that a citizen is "deemed to be registered" to vote, a prerequisite to signing an initiative petition, when he or she submits a voter registration form to the county clerk. NEV. REV. STAT. § 293.5235. In a random 5% sample of the signatures gathered, the Clark County Election Department disqualified 102 signatures based on this rule.

On July 27, 2004, the Committee filed suit against the Secretary and the Clark County Registrar in district court pursu-

ant to 42 U.S.C. § 1983, alleging that the 13 Counties, Dual Affidavit, and Deemed Registered Rules violated the First and Fourteenth Amendments. The Committee claimed that the 13 Counties Rule deprived residents of densely populated counties equal protection under the law; and curtailed their right to free speech and association, and their right to petition the government for redress of grievances.[3] On that same day, the Committee also filed a motion for a temporary restraining order and preliminary injunction, asking the court to enjoin the Secretary from applying the 13 Counties and Dual Affidavit Rules, and to enjoin the Clark County Registrar from applying the Deemed Registered Rule to the signatures on the initiative petition. On August 2, the district court granted the motion for a temporary restraining order, and scheduled a hearing on the motion for a preliminary injunction for August 13, 2004.

At the hearing, the district court informed the parties that, like the rule that the Ninth Circuit invalidated in *Idaho Coalition*, the 13 Counties Rule violated the constitutional tenet of "one person, one vote" due to its unequal impact on voters from the various counties. The court posited that instead of requiring signatures from 10% of the voters in 75% of the counties, Nevada could require those same percentages in legislative districts, presumably state legislative districts, which are more equi-populous than are counties. The court quoted an excerpt from *Idaho Coalition* and stated that it was "giving away [its] thinking on this . . . but it seems . . . that the 13 County Rule is unconstitutional under the *Idaho Coalition* case." The court concluded that under *Idaho Coalition*, the 13 Counties Rule violated the Equal Protection Clause of the Fourteenth Amendment. At the hearing, the parties also agreed to convert the proceeding to a permanent injunction hearing pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

---

[3]Only the Fourteenth Amendment claim is at issue on appeal.

Consistent with the views it expressed at the hearing, the court issued an order on August 20, 2004 declaring the 13 Counties Rule unconstitutional and permanently enjoining the Secretary from enforcing it when considering whether the Committee's initiative qualified for the ballot. The district court issued the same ruling with respect to the Dual Affidavit Rule, enjoining the Clark County Registrar in addition to the Secretary. The court, however, denied the Committee's request to enjoin enforcement of the Deemed Registered Rule, which this court affirmed in an unpublished disposition. *Committee to Regulate and Control Marijuana, et al. v. Lomax*, No. 04-16626. The Secretary timely appealed the court's order enjoining enforcement of the 13 Counties Rule.

## II.   Jurisdiction

Although neither party raises the justiciability issues of standing and mootness on appeal, we have an "independent obligation" to consider them *sua sponte*. *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (mootness); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (standing).

### A.

**[1]** Standing is an "essential component" of the case or controversy requirement of Article III, § 2 of the United States Constitution. *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003). The "irreducible constitutional minimum of standing" contains three parts: (1) injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006). When evaluating whether these three elements are present, we must look at the facts "*as they exist at the time the complaint was filed*." *Lujan*, 504 U.S. at 569 n.4 (internal quotation marks omitted); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by

the facts that exist at the time the complaint is filed."). The injury must not be conjectural or hypothetical; "the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000).

**[2]** It is clear that the Committee suffered a real or immediate threat of an irreparable injury, namely the failure of its initiative to qualify for the ballot. It is also clear that the enforcement of the challenged rule caused this injury. The injury was also redressable when the Committee filed suit. Had the Committee succeeded on all three of its claims, the initiative would have qualified for the ballot. Although the initiative failed to satisfy the Statewide Rule, which the Committee did not challenge, the Statewide Rule did not constitute an independent ground upon which the initiative was rejected. Rather, the initiative failed to meet the 10% statewide threshold precisely because thousands of signatures were disqualified based on violations of the three challenged rules. In other words, the enforcement of the latter rules prevented the initiative from satisfying the former, uncontested rule.

**[3]** In determining redressability, courts "assume that plaintiff's claim has merit." *Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004) ("The question in deciding whether a plaintiff's injury is redressable is not whether a *favorable decision* is likely but whether a favorable decision *likely will redress* a plaintiff's injury."). Assuming then, as we must, that the Committee succeeded on each of the three challenges it brought, the initiative would have obtained the requisite percentage of statewide signatures.[4] Thus, we cannot say that at

---

[4]The record before the district court contained the following relevant information:

According to the Committee, the Secretary validated 34,947 signatures in the raw count, which was 16,390 short of satisfying the Statewide Rule. Had the Secretary not enforced the Dual Affidavit Rule, 15,120 of the 19,830 disqualified signatures would have been verified, based on the ver-

the time the Committee filed suit, its injury was not redress-able. Although the district court ultimately rejected the Com-mittee's challenge to the Deemed Registered Rule, that event did not deprive the Committee of standing to file its complaint in federal court. Because the initiative would have satisfied the Statewide Rule, and qualified for the ballot, had the Com-mittee prevailed on all of its challenges, i.e. because the dis-trict court had the power to prevent the injury at the time the complaint was filed, the Committee's injury was redressable.

---

ification rates of Clark and Washoe Counties, bringing the signature total to 50,067. Had the Clark County Registrar not enforced the Deemed Reg-istered Rule, 2,039 additional signatures, based on an extrapolation from the 102 disqualified signatures in a 5% sample, would have counted. The Registrar contends that there would have been only 1,600 additional signa-tures because only 80 of the 102 signatures would have been reinstated. Either way, these additional signatures bring the total to at least 51,667, which is 330 signatures over the 10% threshold.

The Secretary did not contest standing in district court. However, in his opposition to the Committee's preliminary injunction motion ("opposition brief"), he provided data that differed from that provided by the Commit-tee. According to the Secretary, there were 36,596 valid signatures in the raw count. Because the Dual Affidavit Rule was struck down in an unre-lated state court proceeding during the 2004 initiative qualification period, the Secretary reinstated the 19,830 raw signatures that had been invali-dated. Based on the verification rates of Clark and Washoe Counties, 13,492 of the 19,830 raw signatures would have been verified, bringing the signature count to 50,088. The additional 1600 signatures, based on the Deemed Registered Rule, bring the total to 51,688, which surpasses the 10% requirement.

Although the Secretary's numbers differ slightly from those of the Committee, regardless of which data set we employ, the initiative would have satisfied the Statewide Rule if the Committee had succeeded on all three of its challenges. In fact, in his opposition brief, the Secretary stated that "for Plaintiffs to prevail, the Court must find Nevada's 13 County Rule unconstitutional," thereby suggesting that the Statewide Rule would not prevent the initiative from qualifying for the ballot. Additionally, in the Clark County Registrar's opposition brief, the Registrar acknowledged that if all of the challenged rules were invalidated, the initiative would sat-isfy the Statewide Rule.

*See Ry. Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985) (holding that plaintiffs' injury was not redressable because, even if the court granted the requested injunctive relief, the injury would continue to occur). We therefore hold that the Committee had standing to challenge the 13 Counties Rule.

## B.

**[4]** Like standing, the case or controversy requirement of Article III, § 2 also underpins the mootness doctrine. *Clark*, 259 F.3d at 1006. Whereas standing is evaluated by the facts that existed when the complaint was filed, "[m]ootness inquiries, however, require courts to look to changing circumstances that arise after the complaint is filed." *Id.* If a "live" controversy no longer exists, the claim is moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *Dream Palace v. County of Maricopa*, 384 F.3d 990, 999-1000 (9th Cir. 2004) ("The question of mootness focuses upon whether we can still grant relief between the parties." (internal quotation marks omitted)). Although the 2004 General Election has passed, the Committee's case is not moot. *See, e.g.*, *Padilla v. Lever*, 463 F.3d 1046, 1049 (9th Cir. 2006) (en banc) (holding that plaintiff's challenge to an election law is not rendered moot by the passing of an election); *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 779 (9th Cir. 2006) (same); *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000) (same). Rather, the Committee's claim remains justiciable because it falls comfortably within the "capable of repetition, yet evading review" exception to the mootness doctrine. *See Padilla*, 463 F.3d at 1049.

**[5]** The "capable of repetition, yet evading review" exception applies when (1) the challenged action is too short in duration to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will again be subject to the same action. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978); *Padilla*, 463 F.3d at 1049.

Turning to the first element, a challenged action evades review if it is "almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 454 (9th Cir. 1994). We have held that "[e]lection cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003); *see also Padilla*, 463 F.3d at 1049. This is certainly the case here. In Nevada, county clerks must file constitutional initiatives with the Secretary, who determines whether they qualify for the ballot, 90 days before the general election is held. NEV. CONST. art. 19, § 2(4). Therefore, the Committee had a maximum of 90 days to bring its lawsuit and make its way to this court.[5] Supreme Court precedent, and our own, makes clear that this deadline is insufficient to allow full review. *See, e.g.*, *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (the chances of 6 months being a sufficient amount of time for complete review are "slim at best"); *Bellotti*, 435 U.S. at 774 (18 months is too short a period of time for complete judicial review); *Padilla*, 463 F.3d at 1049-50 & n.1 (same for 4 months); *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329-30 (9th Cir. 1992) (same for 1 year); *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999) (same for 2 years). We therefore conclude that, in the election context, the 13 Counties Rule evades review.[6]

---

[5]In practice, this ephemeral time frame was even shorter. The Secretary determined that the initiative did not qualify for the ballot on July 13, 2004. According to the Secretary, printing of the ballots began on or about August 15, 2004. Therefore, the Committee had only one month to obtain full litigation on the merits in the district court and the court of appeals.

Moreover, because it prevailed in district court with respect to the 13 Counties Rule, the Committee could not initiate the appellate process; rather it had to wait for the Secretary to appeal the district court's order. The Secretary waited the maximum 30-days before filing its notice of appeal, and did not request expedited review.

[6]Although, in extraordinary cases, discretionary procedures for expediting appeals arising out of an election dispute may be available, the possi-

**[6]** To satisfy the second element of the "capable of repetition, yet evading review" exception, the Committee "need only show that it is reasonable to expect that [the Secretary] will engage in conduct that will once again give rise to the assertedly moot dispute." *Miller*, 19 F.3d at 454 (internal quotations marks omitted). The Committee has done so. Throughout this litigation, the Secretary has expressed a clear desire to enforce the 13 Counties Rule, insisting that the rule passes constitutional muster and furthers the interests of Nevada. Therefore, if we do not hear this case, and the injunction is vacated, there is a reasonable expectation that this precise issue will repeat itself.[7]

**[7]** In sum, we conclude that the Committee's challenge, although premised on an election that has long passed, is "capable of repetition, yet evading review." We therefore hold

bility of expedited review does not render this case moot. *See Padilla*, 463 F.3d at 1050; *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir. 1983) (" 'Evading review' for the purpose of the exception need not mean that review is impossible. It only means that in the ordinary course of affairs it is very likely to escape review."). Because the appellate process is "frequently too slow to process appeals before an election," we apply this mootness exception to enable the Secretary to obtain complete judicial review. *See Porter*, 319 F.3d at 490 (internal quotation marks omitted).

Moreover, even if the Secretary had appealed immediately and requested expedited review, it is highly unlikely that full appellate review would have been accomplished in 30 days. On the same day the district court issued its order, the Committee filed a notice of appeal with respect to the court's ruling on its challenge to the Deemed Registered Rule. Although the appeal was promptly assigned to a motions panel and an expedited briefing schedule was ordered, the judgment from this court did not become final until October 20, 2004—two months after the appeal was filed.

[7]At oral argument, the Secretary informed us that several initiative petitions have been placed on the 2006 General Election ballot, even though they do not satisfy the 13 Counties Rule. Therefore, according to the parties, there is a reasonable possibility if the injunction is vacated that the federal courts will be faced with the precise constitutional question that this case presents.

that the case is justiciable,[8] and proceed to examine the merits of the Secretary's appeal of the district court's ruling on the 13 Counties Rule.

### III.   The 13 Counties Rule

#### A.

This court reviews for abuse of discretion a district court's order granting permanent injunctive relief. *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 921 (9th Cir. 2003). However, we review "any determination underlying the grant of an injunction by the standard that applies to that determination." *Ting v. AT&T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003). We conduct a *de novo* review of legal determinations. *Id.* at 1135.

The Secretary argues that the district court's decision to permanently enjoin enforcement of the 13 Counties Rule was flawed for two related reasons. First, the Secretary asserts that because the Committee challenged the 13 Counties Rule as a violation of the Equal Protection Clause of the Fourteenth Amendment, the district court was required to undergo a strict scrutiny review of the rule in determining whether the rule was constitutional. Rather than doing so, the Secretary asserts that the district court blindly followed this court's decision in *Idaho Coalition United for Bears v. Cenarrussa*, 342 F.3d 1073 (9th Cir. 2003), which, according to the Secretary, does not control the present case. Second, the Secretary argues that the 13 Counties Rule survives strict scrutiny review. We disagree on both counts.

[8] As the transcripts of the preliminary injunction hearing show, the district court engaged in a careful strict scrutiny analysis of the constitutionality of the 13 Counties Rule.[9]

---

[8]We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

[9]In addition to the court's oral statements at the preliminary injunction hearing, the court's subsequent written order cited directly to *Idaho Coalition*. Although brief, the court's order further shows that the court adopted the analysis and reasoning of that case.

After the Secretary presented his argument, the court reasoned that the effect "of the 13 County Rule is to violate one-man, one-vote," which was the "vice that [the court in *Idaho Coalition*] found," because it favored voters in sparsely populated areas. The court also noted that the 13 Counties Rule could be changed so that the more equally-apportioned electoral districts, rather than counties, are the units of interest, which would alleviate some of the disparate impact caused by the current rule. Finally, the court concluded that the 13 Counties Rule "violates the equal protection clause and the rationale that I rely on for that is the *Idaho Coalition* case."

**[9]** In light of the record, we cannot say that the district court relied on *Idaho Coalition* without engaging in the requisite strict scrutiny analysis. The record reflects that the district court did not simply import the end-result of *Idaho Coalition* to the present case, nor did it apply the reasoning of *Idaho Coalition* blindly. Instead, the court applied the rationale of *Idaho Coalition* only after it correctly determined that the present case is governed by *Idaho Coalition*, as explained below.

B.

**[10]** We agree with the district court that *Idaho Coalition* controls. Like Nevada, the Idaho Constitution permits its citizens to propose and enact laws through the initiative process. *Idaho Coalition*, 342 F.3d at 1074. Idaho had an initiative rule similar to the 13 Counties Rule—to qualify as a ballot initiative, a proposed law had to receive signatures of support from at least 6% of the qualified voters in the state, including 6% of the qualified voters in at least 50% of the state's 44 counties. *Id.* Also like Nevada, the population of Idaho's counties is unevenly distributed—60% of the population resides in just 9 counties. *Id.* at 1075. Therefore, Idaho's signature requirement, like the 13 Counties Rule, favored residents of sparsely populated counties over residents of heavily populated counties. *Id.*

In determining the constitutionality of Idaho's signature requirement, we looked to the Supreme Court's decision in *Moore v. Ogilvie*, 394 U.S. 814 (1969), for guidance. 342 F.3d at 1076. In *Moore*, the Supreme Court, applying the principle of "one person, one vote" to the petition context, invalidated an Illinois statute that required nominees of newly formed political parties to collect at least 25,000 signatures, which had to include 200 signatures of qualified voters from each of at least 50 of the 102 counties in the state. 394 U.S. at 815. Recognizing that "[a]ll procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote," *id.* at 818, the Supreme Court struck down the statute because it discriminated in favor of residents of less-populous rural counties in violation of the Fourteenth Amendment, *id.* at 819. Although the Supreme Court did not expressly engage in a strict scrutiny analysis,[10] this court in *Idaho Coalition* concluded that "under *Moore*, strict scrutiny applies." 342 F.3d at 1077.

[11] Because of the Idaho rule's unfavorable treatment of urban residents, we concluded that the signature requirement violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 1079. We rejected Idaho's argument that the policy served a compelling state interest "in requiring a modicum of statewide support in the direct legislation context," and further determined that even if this and other purported state interests were compelling, the rule was not narrowly tailored. *Id.* at 1078 (internal quotation marks omitted). Contrary to the Secretary's argument that the import of *Idaho Coalition* is limited to its use of strict scrutiny review, its holding—an initiative qualification rule that requires a

[10]To survive strict scrutiny review, "the policy in question [must] be narrowly tailored to achieve a compelling state interest." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., No. 1*, 426 F.3d 1162, 1172 (9th Cir. 2005) (en banc), *cert. granted*, ___ U.S. ___, 126 S.Ct. 2351 (U.S. June 05, 2006) (No. 05-908).

fixed percentage of petition signatures from a fixed percentage of counties in a state with a substantially uneven geographic distribution pattern, which favors residents of sparely populated areas over residents of densely populated areas, violates the Equal Protection Clause of the Fourteenth Amendment—controls.

The Secretary's attempts to distinguish *Idaho Coalition* are unavailing. The Secretary argues that because Nevada, as compared to Idaho, requires a larger percentage of statewide signatures, 10% compared to 6%, and a higher percentage of county support, 75% compared to 50%, a different result is compelled in this case. Although we did suggest that Idaho could achieve some of its objectives "by simply increasing the statewide percentage of signatures required," *id.* at 1079, we posited the statewide percentage increase *in lieu of*, rather than in conjunction with, a county-based requirement. We suggested that an increase in the percentage of signatures required might help the state achieve its objectives of preventing voter confusion and fraud; we did not suggest that an increase in the required percentage of signatures would eliminate concerns regarding the constitutionality of the state's efforts to ensure that voter initiatives had significant statewide support by allocating equal power to counties of unequal populations. A general statewide increase of the fixed percentage requirement does not resolve the constitutional infirmities resulting from a system that dilutes the power of some votes by providing more sparsely populated counties with the same total power as densely populated counties.[11]

---

[11]In searching for ways to differentiate Idaho's rule, the Secretary omits a distinguishing fact—the definition of "eligible voters" is not the same for the Idaho and Nevada rules. Whereas the Idaho rule required the signatures of at least 6% of *registered voters*, Nevada requires the signatures of at least 10% of *people who voted in the last election*. In other words, despite requiring a larger percentage of signatures, the signature pool that the 13 Counties (and Statewide) Rule establishes is more limited than that established by the Idaho rule.

**[12]** Further, in light of our determination that Idaho's rule was not sufficiently distinct from the Illinois rule at issue in *Moore*, the facial distinctions between the Idaho rule and the 13 Counties Rule, which the Secretary highlights, also do not compel a different result. Whereas the Illinois rule involved voter support for candidates and required a fixed number of signatures regardless of a county's population, the Idaho rule involved voter support for initiatives and required a fixed percentage of signatures of a county's qualified voters. Further, whereas 93.4% of Illinois's registered voters resided in 49 of its 102 counties, 60% of Idaho's population reside in 9 of its 44 counties. Despite these differences, this court concluded that "[b]oth the Idaho and Illinois requirements violate the Equal Protection Clause, because they allocate equal power to counties of unequal population." *Idaho Coalition*, 342 F.3d at 1078. In other words, the common diluting impact of both rules outweighed all of their distinctions. Because Nevada's 13 Counties Rule also dilutes the votes of urban residents, and is more similar to the Idaho rule than was the Illinois rule— the 13 Counties rule regulates voter support for initiatives and requires a fixed percentage of a county's qualified voters—the district court correctly determined that *Idaho Coalition* controls.[12]

**[13]** As previously noted, we have rejected the precise compelling state interest that the Secretary has put forth. *See Idaho Coalition*, 342 F.3d at 1078.[13] Moreover, even assuming that ensuring statewide support of a ballot initiative is a

---

[12]Another district court in the Ninth Circuit recently invoked *Idaho Coalition* to invalidate a Montana signature requirement similar to the one at issue in Idaho and the present case. *See Mont. Pub. Interest Research Group v. Johnson*, 361 F. Supp. 2d 1222, 1228 (D. Mont. 2005) (finding that *Idaho Coalition* controls where the state population is unevenly distributed and an initiative petition law required signatures from at least 5% of the qualified voters statewide, including at least 5% of the qualified voters in at least 50% of the 56 counties).

[13]The Supreme Court also rejected this state interest. *See Moore*, 394 U.S. at 818-819 ("It is no answer to the argument under the Equal Protec-

compelling state interest, the 13 Counties Rule remains unconstitutional because it is not narrowly tailored. Nevada could base the 13 Counties Rule on legislative districts, as the district court noted. Because Nevada could advance its proffered interest while alleviating unconstitutional vote dilution, the 13 Counties Rule, as the district court correctly determined, does not survive strict scrutiny review.

## IV.   Conclusion

The Committee challenged the 13 Counties Rule and two other Nevada laws concerning the initiative process. Had the Committee succeeded on each of its challenges, its initiative would have qualified for placement on the ballot. In light of the short time frame and the reasonable expectation that the Committee will again be subject to this challenged rule, it is "capable of repetition, yet evading review." We therefore hold that this case is justiciable—the Committee had standing to bring this challenge and the case is not moot.

We further hold that the 13 Counties Rule is unconstitutional. Like the rule in *Idaho Coalition*, the 13 Counties Rule dilutes the votes of residents of densely populated counties in violation of the Equal Protection Clause. Therefore, the district court properly granted the Committee permanent injunctive relief.

**AFFIRMED.**

---

tion Clause that this law was designed to require statewide support for launching a new political party rather than support from a few localities. . . . The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.").