CANBY, Circuit Judge:
A provision of the federal Voting Rights Act, 42 U.S.C. § 1973aa-la(c), requires that, in certain States with substantial linguistic minority populations of voting age, election materials must be provided in the applicable minority languages as well as English. This requirement applies to any covered State or political subdivision that “provides any ... materials or information relating to the electoral process.” Id. (emphasis added). The question presented by this appeal is whether this requirement attaches to recall petitions initiated, circulated and paid for by private proponents of a recall, when the proponents are required to draft the petitions in a form specified by the State and county.
We conclude that § 1973aa-la(e) does not apply to such recall petitions because they are not “provide[d]” by the State or its subdivision. We therefore affirm the judgment of the district court, which rejected the plaintiffs’ challenge to a recall election triggered by petitions circulated only in English.
BACKGROUND
The recall petitions at issue were initiated by defendant Vivian Martinez and others, who sought to recall Santa Ana Unified School District Board Member Na-tivo Lopez. Pursuant to California Elections Code section 11000 et seq., the proponents drafted and printed (in English) a Notice of Intention to Circulate Recall Petition, which included a statement of the grounds for recall. The proponents filed the Notice with the Orange County Registration and Elections Department and a copy was served on Lopez. In response, Lopez filed an Answer (also in English) with the County Elections Department and served copies on the recall proponents.
The recall proponents then drafted a recall petition in accordance with the California Elections Code and the regulations of the California Secretary of State. The recall petition included a request to hold an election to replace Lopez, the Notice of Intention (including a statement of the reasons for the recall), and Lopez’s Answer. Except for Lopez’s Answer (which he drafted), the recall proponents drafted the contents of the Recall Petition, adhering to the requirements and format specified by the Secretary of State. This draft petition was in English only.
As required by Cal. Elec.Code § 11042, the recall proponents filed two blank copies of the Recall Petition with the Orange County Elections Department, along with a proof of publication of the Notice of Intention, for election officials to ascertain whether the recall petition conformed to the proper format and applicable election law. See Cal. Elec.Code § 11042(a)-(b). The County Elections Department reviewed the proposed form and wording of the petition and concluded that it conformed to the requirements of the California Election Code. They accordingly authorized circulation of the petitions. They required no translation, and the authorized petition was printed only in English. The final petitions, also in English, were printed at the proponents’ expense.
In April 2002, the proponents began collecting signatures and in September 2002 they submitted the signed petitions to the County Elections Board, which verified the signatures and certified that enough signatures had been collected to precipitate an election. The School District then set a recall election for February 4, 2003.
*1049 On December 12, 2002, however, the plaintiffs entered the picture. They are registered voters and residents of the School District whose primary language is Spanish. They filed this action seeking injunctive and declaratory relief against Martinez and the County officials charged with overseeing the recall election. The complaint alleged that the recall petitions did not comply with § 1973aa-la(c) of the Voting Rights Act because they had not been translated into Spanish. The plaintiffs sought an injunction prohibiting the defendant officials from taking any steps to proceed with the recall election and requiring translation of the recall petition into Spanish.
The plaintiffs alleged that they signed the petitions because the circulators misrepresented the petitions’ nature, and the plaintiffs could not fully understand the petitions firsthand because they were printed only in English.
The plaintiffs sought a temporary restraining order to prevent the election, and the district court denied that motion on December 24, 2002. The plaintiffs moved for a preliminary injunction, which the district court denied on January 10, 2003. The plaintiffs appealed and sought to prevent the election by filing an emergency motion for injunction pending appeal, which this court denied on January 30, 2003. The election took place as scheduled on February 4, 2003, and the plaintiffs then voluntarily dismissed their appeal of the denial of the preliminary injunction. On February 21, 2003, the district court granted defendant Martinez’s motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Finally, on June 16, 2003, the district court granted the county defendants’ motion for judgment on the pleadings. The plaintiffs appealed.
DISCUSSION
1. Mootness.
The plaintiffs concede that their claim for injunctive relief has become moot. The recall election has occurred, and the term of office filled by that election has expired. The plaintiffs contend, however, that their claim for declaratory relief is not moot. We conclude that they are correct.
The plaintiffs seek a declaration that the Voting Rights Act was violated when the proponents were permitted to, and did, circulate petitions printed only in English. It is too late, of course, for the declaration to have any effect on the recall petitions for the election of February 4, 2003. The plaintiffs’ claim for declaratory relief, however, falls classically into that category of cases that survive mootness challenges because they are “ ‘capable of repetition, yet evading review.’ ” Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (quoting Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). That exception applies when “(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reas'onable expectation that the plaintiffs will be subjected to it again.” Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir.1992).
As we observed in Porter v. Jones, 319 F.3d 483, 490 (9th Cir.2003), “the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.” Here, the petitions were certified as sufficient on September 26, 2002, and the election was held on February 4, 2003 — a period of approximately four and one-half months during which the plaintiffs could have challenged the threatened election.[1] In other contexts, we have *1050 held that periods as long as one or two years were insufficient to permit full review of challenged regulations or practices. See Greenpeace Action, 14 F.3d at 1329-30 (one year); Alaska Ctr. for the Env’t v. U.S. Forest Serv., 189 F.3d 851, 855 (9th Cir.1999) (two years).
Here, the plaintiffs vigorously sought prompt review, seeking stays in both the district court and our court. Those stays were denied but the plaintiffs did not receive a full adjudication of their claim on the merits. We are reaching the merits of their claim today, some four and one-half years after they filed their complaint. This case evaded review, and likely would again. It is true that in some extraordinary eases, we are able to hear expedited appeals prior to a scheduled election, see, e.g., SW Voter Registration Educ. Proj. v. Shelley, 344 F.3d 914 (9th Cir.2003) (en banc), but we cannot expect extraordinary responses as a matter of course. “ ‘Evading review’ for the purpose of the exception need not mean that review is impossible. It only means that in the ordinary course of affairs it is very likely to escape review.” Joyner v. Mofford, 706 F.2d 1523, 1527 (9th Cir.1983).
There is also a reasonable expectation that the plaintiffs will again be presented with recall petitions printed only in English. The election officials’ practice of not requiring translation remains in place, and recall petitions printed only in English are likely to be circulated in the plaintiffs’ district in the future. See Alaska Right to Life Comm. v. Miles, 441 F.3d 773, 779-80 (9th Cir.2006) (finding claim not moot because of “sufficient likelihood” that petitioners would have to comply with challenged campaign finance laws in future). This case is not moot.
2. Recall Petitions and the Voting Rights Act.
The Voting Rights Act of 1965 imposes certain bilingual or multilingual election requirements for “covered” States or political subdivisions. “Covered” States or subdivisions are defined by certain requisite percentages of minority-language citizens of voting age who have limited proficiency in English and whose illiteracy rate is above the national average. See 42 U.S.C. § 1973aa-la(b)(2)(A). There is no dispute that Orange County, California, which conducted the recall election, is a “covered” subdivision.
The controversy before us centers on the following provision of the Act:
Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language.
Id. § 1973aa-la(c) (emphasis added).[2] We conclude, as did the district court, that the recall petitions circulated by the proponents of the recall were not subject to this provision because they were not “provided” by Orange County or the State.[3]
*1051 It is true that California regulates recall petitions in some detail. The petitions must follow a format provided by the Secretary of State, and must use a minimum type size. See Cal. Elec.Code § 11041(a). The petition also must include a copy of the Notice of Intention, the statement of grounds for recall, and the answer of the targeted officer if the officer submitted one. Id. at § 11041(a)(2), (3). But these regulations do not mean that the petitions are provided by the State or subdivision. The form is regulated by the State, but the proponents fill out the petition, supply the grounds of recall, and have the petitions printed at their own expense. The fact that, under Cal. Elec.Code § 11041(a), the Secretary of State “provides” the format does not mean that the State “provides” the petitions themselves within the meaning of the Voting Rights Act.
The plaintiffs argue that, because the election officials are charged under state law with ascertaining whether “the proposed form and wording of the petition meets the requirements of this chapter[,]” Cal. Elec.Code § 11042(a) (emphasis added), they are dictating the content of the petitions to the degree that the petitions may be said to be “provided” by the County. But there is nothing in the chapter governing elections that specifies the actual wording that proponents must use, for example, in stating their grounds for recall. Nor does the record contain any hint that the election officials determine the contents of the petition; they merely make sure that the petitions are in the form specified by statute. It is not reasonable to hold that this regulatory process transforms petitions privately initiated, drafted, and circulated by the proponents into petitions “provided” by the County for purposes of the Voting Rights Act.
Our conclusion does not conflict with our decision in Zaldivar v. City of Los Angeles, 780 F.2d 823 (9th Cir.1986), overruled on other grounds by Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In that case the complaint alleged that § 1973aa-1a applied to a Notice of Intention to seek a recall election. Id. at 826-27.. We did not rule on that point; we ruled only that an attorney who signed the complaint could not be sanctioned under Fed.R.Civ.P. 11 for filing a frivolous lawsuit.[4] See id. at 833. That a claim is not frivolous does not establish that it is meritorious.
Our conclusion that the County did not “provide” the recall petitions is not only consistent with Zaldivar, it is directly supported by the decisions of two of our sister circuits. The Tenth Circuit held in Montero v. Meyer, 861 F.2d 603, 609-10 (10th Cir.1988), that initiative petitions were not subject to the requirements of § 1973aa-1(c) because they were not provided by the State. The Eleventh Circuit came to a similar conclusion in Delgado v. Smith, 861 F.2d 1489, 1496 (11th Cir.1988).[5] No cir *1052 cuit authority to the contrary has been cited to us, and we have found none. The plaintiffs argue that the Justice Department has supported their view in its regulation describing the types of materials that must be provided in a minority language. The regulation states in part:
A jurisdiction required to provide minority language materials is only required to publish in the language of the applicable language minority group materials distributed to or provided for the use of the electorate generally. Such materials include, for example, ballots, sample ballots, informational materials, and petitions.
28 C.F.R. § 55.19(a) (1999) (emphasis added). We are not convinced that this regulation encompasses recall petitions initiated, drafted and circulated by citizens. Moreover, we have been directed to no instances in which the Department of Justice has attempted to impose translation requirements on recall petitions in the several decades that § 1973aa-la has been in existence. In any event, the ultimate determination is what Congress meant by imposing requirements on materials “provided” by the State or its subdivision. That term simply cannot reasonably be construed to apply to recall petitions initiated, drafted and circulated by private citizens.
We hold, therefore, that § 1973aa-l(a) does not apply to the recall petitions in this case. The language and structure of the statute compel our decision. We note in addition that there are sound practical reasons supporting what we conclude is an inevitable interpretation of the statute.
It distorts § 1973aa-la to apply it in a situation for which it clearly is not intended. Those who circulate recall petitions have an incentive to gather as many signatures as they can,[6] but they are under no legal duty to do so, just as they were under no duty to launch a recall process at all. No one, including the plaintiffs, suggests that the proponents have any duty to present a petition to any particular voter, or to solicit in any particular neighborhood. The plaintiffs in fact concede that they have no right to have a petition presented to them; they insist only that they have a right to be provided a translation with any petition that is presented to them. But when the Voting Rights Act creates no duty to present a petition to the plaintiffs in the first place, it is difficult to see why the Act requires the petition to be translated into their language.
A requirement of translation for recall petitions is far more likely to be used as a sword than a shield, as in the case of the plaintiffs here, who brought their suit to stop an election for which sufficient signatures had been collected. The plaintiffs complain that they were deceived as to the nature of the petition, and this deception caused them to sign it. There are, however, avenues of relief available to the plaintiffs that do not threaten the recall process itself. One is to rescind the signature, as one of the plaintiffs here did, by filing a written request with the election officials prior to the day the petition section bear *1053 ing the signature is filed. See Cal. Elec. Code § 11303. Another, ultimate resort is to vote “no” in the recall election.
Finally, a translation requirement is very likely to have a chilling effect on the petition process itself. If translation is required in Orange County, recall petitions will have to be printed, at a minimum, in English, Spanish, Vietnamese, Korean and Chinese.[7] There is no provision in state law or the Voting Rights Act requiring the County to bear the costs; printing of recall petitions is done at the expense of the proponents, as in the present case. The expense and trouble of fulfilling the translation requirements are likely to deter proponents who otherwise would launch petitions. When that happens, then application of § 1973aa-la will have had a perverse effect: it will have prevented, rather than promoted, participation in the electoral process.
We are satisfied, therefore, that our interpretation of § 1973aa-la is not only compelled by its language but also reaches the most practical result in light of the nature of the recall petition process.
CONCLUSION
The judgment of the district court is AFFIRMED.

. The initiative process itself began with the filing of a Notice of Intention on March 25, *1050 2002, but there was nothing in the Notice of Intention that would indicate whether the recall petition would be translated into languages other than English. The earliest that plaintiffs could conceivably have sued for declaratory relief would have been when the petitions were first circulated in April 2002— some eleven months before the election. As we point out above, even that period is too short to permit full litigation of the plaintiffs’ challenge.

. A complementaiy prohibition appears earlier in the same section: "Before August 6, 2007, no covered State or political subdivision shall provide voting materials only in the English language.” 42 U.S.C. § 1973aa-la(b)(l).

. Our conclusion makes it unnecessary for us to address the question whether recall petitions meet a second requirement of *1051 § 1973aa-la(c): that they qualify as "materials ... relating to the electoral process.”

. The dissent errs in relying on our dicta in Zaldivar in the absence of any other precedent supporting its argument. (Dissent at 1058, 1061). Beyond its narrow holding, Zaldivar's dicta were confined to whether it was frivolous to view the Notice of Intention as "relating to the electoral process,” and did not address the question whether it was "provided” by the City. Zaldivar, 780 F.2d at 833.

. The dissent argues that Montero and Delgado are "readily distinguishable” because "California’s statutory scheme is more stringent than those in Colorado or Florida, making [it] ... more than ‘merely ministerial.’ (Dissent at 1062). Notwithstanding the dissent's assertion, the California Court of Appeal has characterized local election officials’ duties as "purely ministerial” and said that such officials are authorized only "to review a petition as submitted for compliance with procedural requirements” and are foreclosed from making “decisions that are discretionary or go beyond a straightforward comparison of the submitted petition with the statutory requirements for petitions.” Alliance for a *1052 Better Downtown Millbrae v. Wade, 108 Cal.App.4th 123, 133, 133 Cal.Rptr.2d 249 (2003); see also Farley v. Healey, 67 Cal.2d 325, 327, 62 Cal.Rptr. 26, 431 P.2d 650 (1967)(Traynor, C.J.) ("The right to propose initiative measures cannot properly be impeded by a decision of a ministerial officer ... that the subject is not appropriate for submission to voters.”).

. Any signature of a registered voter that the proponents fail to obtain counts as a "no” vote on the question whether to have a recall election. The number of signatures needed to precipitate a recall election is calculated as a percentage of the total number of registered voters in the affected district. See Cal. Elec. Code § 11221.

. The dissent here understates the problem by pointing out that the election officials failed to require translation of the petitions into Spanish, and that the County's regulation of the process triggers the "bilingual requirements” of the Voting Rights Act. (Dissent at 1061). If § 1973aa-la were held to apply to the petitions in this case, they would have to be circulated in five languages, whether or not the petitions were presented to speakers of all of those languages.