*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ROSE BOGAERT,
                                    *Plaintiff-Appellee,*

            *v.*

                                                                    Nos. 08-2130/2131/2140

TERRI LYNN LAND, Individually and in her official
capacity as Michigan Secretary of State,
                        *Defendant-Appellant (08-2130),*

ANDREW DILLON,
                        *Intervenor-Appellant (08-2131),*

WAYNE COUNTY CLERK CATHY M. GARRETT;
WAYNE COUNTY ELECTION COMMISSION,
                        *Intervenors-Appellants (08-2140).*

———————

Filed:  October 8, 2008

Before:  CLAY, GILMAN, and ROGERS, Circuit Judges.

———————

**ORDER**

———————

        The plaintiff is the sponsor of a petition to recall a Michigan state legislator from office. In June 2008, Michigan Secretary of State Terri Lynn Land, invoking the provisions of M.C.L. § 168.957, declared that the plaintiff had not obtained the required number of votes to put the recall issue on the ballot. The plaintiff then filed this civil rights action asserting that M.C.L. § 168.957 violated the First Amendment.  She also filed a motion for a preliminary injunction ordering Secretary Land to re-examine the recall petitions without applying the challenged state statute. Representative Andrew Dillon, the subject of the recall petition, was permitted to intervene, as were Wayne County Clerk Cathy M. Garrett and the Wayne County Election Commission – the latter two being responsible for the final preparation of the ballot in the state legislative district represented by Dillon.

        On August 27, 2008, the district court granted a preliminary injunction directing Secretary Land to re-examine the submitted petitions without applying M.C.L. § 168.957, and, if she found that the plaintiff had submitted sufficient signatures, to certify the recall initiative for placement on the November 2008 general election ballot.  Secretary Land and the intervenors (hereinafter collectively referred to as "the appellants") filed notices of appeal and moved this court for a stay of the preliminary injunction pending appeal.  This court denied those motions in an order of

1

September 9, 2008. Secretary Land subsequently completed her re-examination of the submitted petitions and certified the recall initiative for placement on the general election ballot. That ballot has now been prepared and sent to the printers.

In light of the above developments, the plaintiff now moves for the dismissal of all three appeals on the ground of mootness. The plaintiff argues that Secretary Land has fulfilled all of the obligations required of her under the preliminary injunction, that her actions are irrevocable, and that this court can no longer render relief in the immediate appeals. The appellants oppose such dismissal by arguing that this court could still award relief to them through the November election and until such time as the ballots are tabulated and certified as final. The Wayne County intervenors also argue that there is still time to inform voters that the recall initiative has been removed from the ballot or to program scanning equipment not to count any votes cast on the recall initiative.

All parties agree that the specific steps required by the preliminary injunction have been completed and that those steps cannot be undone at this time. The concerns expressed by our dissenting colleague appear to us to fall outside the scope of the preliminary injunction, which we do not view as "revocable" simply because the future course of the litigation could alter its effects. Dismissal of these preliminary-injunction appeals, of course, does not render moot the underlying district court litigation. Should there be a dispute as to further steps in the election process that were not addressed in the preliminary injunction, the parties are free to seek interim relief in the district court. Should the district court enter further orders or a judgment in the action pending before it, an adversely affected party or parties may seek further review in this court as permitted by the normal appellate process.

Furthermore, the appellants' argument that their appeals are not moot is based solely on the *possibility* that this court may render, before the date of the general election, an opinion that will negate the preliminary injunction entered by the district court. This hypothetical opinion would presumably require the appellants to take measures affecting the voting process or the tabulation of votes such that the recall vote would have no effect. The appellants, however, have thus far sought only a stay of the preliminary injunction – a remedy this court denied in its order of September 9, 2008. They did not seek reconsideration of that order and did not move for expedited consideration of their appeals or request expedited briefing schedules. As a result, the briefing necessary for full appellate review in this matter will not have been completed until well after the general election has taken place and the votes tabulated. What may be possible in theory does not conform to the realities of the situation before us. We therefore conclude that the pending appeals are moot.

It therefore is **ORDERED** that the motions to dismiss are granted.

CLAY, Circuit Judge, dissenting.  Just three weeks ago, this Court resorted to legal technicalities to deny appellants' emergency motions seeking to stay the district court's preliminary injunction.  In my opinion, that decision improperly deprived Representative Dillon and Secretary of State Land of their right to have their claims considered on the merits.  Today, the Court adopts that same approach, and in doing so once again improperly deprives the litigants, and indeed the citizenry of the State of Michigan, of a forum for the proper consideration of these important issues.

According to the majority, these appeals are now moot because appellants have not yet requested expedited consideration of their appeals and thus their opposition to the present motion rests merely on the "*possibility* that this court may render, before the date of the general election, an opinion that will negate the preliminary injunction entered by the district court."  In other words, the majority finds these appeals moot because, absent expedited consideration, the normal course of briefing provided for in Rule 31 will not be completed before the election.  But that cannot be the legal test for determining mootness.  Mootness is a jurisdictional question that serves to define the reach of the federal courts.  Mootness thus turns on the nature of the claims presented and whether the courts can offer meaningful relief to the parties, not on guesswork regarding what course briefing may take in a case.  This Court's jurisdiction to hear an appeal certainly does not turn on whether the briefing schedule provided for in Rule 31 can be followed.

Contrary to the characterization of the majority, appellants are not arguing that it is the *possibility* that this Court may issue an opinion before the November election that defeats mootness here, but rather the *capability* of this Court to still render meaningful relief up until that time.  At this point, the Court simply does not know whether appellants will seek expedited briefing or choose to pursue other legal maneuvers to have their claims considered before the election.  But what we do know is that appellants' papers make clear that meaningful relief may still be had up until the election has occurred and the results have been finalized.  Until such time as meaningful relief is no longer available, dismissing these appeals as moot would be premature.  At a minimum, the Court should either request further briefing on the availability and practicality of alternative relief, or at least advise appellants that the Court is inclined to dismiss the appeals unless expedited briefing is requested immediately.

Because the majority's dismissal order is predicated on an overly narrow understanding of the mootness doctrine and apparent guesswork regarding the future course of briefing, I respectfully must dissent.

I.

Representative Andrew Dillon represents the 17th House District in the Michigan House of Representatives.  He also is the Speaker of the House.  Plaintiff-Appellee Rose Bogaert is a resident of the 17th House District.  On October 1, 2007, Representative Dillon voted in favor of an increase in the state income tax and to extend the state sales tax to certain services.  Based on this vote, Plaintiff initiated a campaign to recall Representative Dillon.

On October 12, 2007, Plaintiff filed a recall petition against Representative Dillon with the Wayne County Clerk.  Under M.C.L. § 168.952(3), the Wayne County Election Commission (the "Commission") is charged with determining whether the recall petition is "of sufficiently clarity."  On November 1, 2007, the Commission determined that the recall petition was not sufficiently clear, and rejected the petition.  As provided for under M.C.L. § 168.952(6), Plaintiff filed an appeal from the Commission's decision in Wayne County Circuit Court.  On January 18, 2008, the circuit court approved Plaintiff's recall petition as sufficiently clear for purposes of M.C.L. § 168.952(3).  Representative Dillon appealed that decision to the Michigan Court of Appeals.  While that appeal was pending, Plaintiff moved forward with the recall petition drive.

Following the approval of a recall petition, Michigan law affords a party 90 days to collect a sufficient number of signatures to place the recall on the ballot. In this case, Plaintiff apparently had until May 2, 2008 to collect sufficient signatures. Under Michigan law, 8,724 valid signatures—a figure equal to one-quarter of the number of people that voted in the last gubernatorial election in the 17th District—were required to place the recall on the ballot. On May 1, 2008, Plaintiff submitted 15,737 signatures to the Secretary of State for review.[1] Under M.C.L. § 168.961a(2), Representative Dillon and other opponents of the recall had 30 days to challenge the validity of the submitted signatures, including the 2,053 signatures at issue here. Representative Dillon contends that, because he relied on the Secretary's anticipated enforcement of M.C.L. § 168.957, he did not conduct a substantive review of those signatures that were collected by recall petition circulators who were not registered to vote in the 17th District, and instead focused his attention on challenging the validity of the other 13,000 signatures.

Based on her review of the submitted signatures, and after considering Representative Dillon's various challenges, the Secretary concluded that the petition was support by only 7,948 valid signatures,[2] 776 less than the number required to place the recall on the ballot, and thus rejected the petition on June 5, 2008. In particular, the Secretary determined that 2,053 signatures were invalid under M.C.L. § 168.957 because they were collected by petition circulators who were not registered to vote in the 17th District.[3] Specifically, the Secretary determined that 14 circulators were not registered to vote in the district and 4 other circulators registered sometime after they began collecting signatures. Plaintiff claims that her own signature in support of the recall petition was among the signatures rejected by the Secretary under M.C.L. § 168.957.

One day later, on June 6, 2008, Plaintiff filed an emergency motion in the Michigan Court of Appeals seeking a writ of mandamus to compel the Secretary to reexamine the 2,053 petition signatures she found facially invalid under M.C.L. § 168.957. In an order issued on June 10, 2008, the Michigan Court of Appeals denied without comment Plaintiff's mandamus motion. Plaintiff immediately sought leave to appeal to the Michigan Supreme Court. On June 11, 2008, the Michigan Supreme Court denied Plaintiff's application for leave to appeal, stating only that the court was "not persuaded that the questions presented should be reviewed by this Court." *Bogaert v. Sec'y of State*, 749 N.W.2d 743 (Mich. 2008). On June 13, 2008, the Michigan Supreme Court issued a second order again denying leave to appeal and reiterating that the court was "not persuaded that the questions presented should be reviewed by this Court." *Bogaert v. Sec'y of State*, 749 N.W.2d 751 (Mich. 2008).

With the state courts having washed their hands of the issue, Plaintiff filed the instant action on July 18, 2008 in the United States District Court for the Western District of Michigan. Plaintiff moved pursuant to 42 U.S.C. § 1983 for a preliminary injunction to compel Terri Lynn Land, in her official capacity as the Michigan Secretary of State, to reexamine the 2,053 contested signatures and to certify all signatures that she determined to be otherwise valid. Plaintiff's motion rested primarily on the claim that M.C.L. § 168.957 violates the First Amendment. Representative Dillon moved to intervene, as did Wayne County Clerk Cathy M. Garrett and the Wayne County Election

---

[1]The Secretary of State is charged with determining the sufficiency of signatures appearing on all recall petitions submitted for review within 35 days of filing, and to declare the sufficiency or insufficiency of the petition. M.C.L. § 168.963.

[2]The Secretary rejected as invalid 5,736 signatures for reasons not at issue in the instant lawsuit.

[3]M.C.L. § 168.957 specifies that each petition must contain a Certificate of Circulator stating that the circulator attests to being a "qualified and registered elector of the election district of the official sought to be recalled." The certificate explains that a circulator making a false statement in completing the certificate may be guilty of a misdemeanor.

Commission (collectively the "Wayne County Intervenors"). Without awaiting a response from Plaintiff, the district court granted the motions for intervention. *Bogaert v. Land*, No. 1:08-CV-687, 2008 WL 2952006 (W.D. Mich. Jul 29, 2008).

After receiving full briefing from the parties, the district court held a hearing and permitted argument on July 31, 2008. After that hearing, the district court informed the parties that it would accept supplemental briefing on the issue. The parties submitted supplemental briefs two weeks later. On August 27, 2008, the district court granted Plaintiff a preliminary injunction based on its conclusion that M.C.L. § 168.957 likely violated the First Amendment. *Bogaert v. Land*, ___ F. Supp. 2d ___, 2008 WL 3915148 (W.D. Mich. Aug. 27, 2008). The injunction ordered the Secretary to reexamine the 2,053 signatures at issue, and to certify any of those signatures that were not invalid for other reasons. *Id.* at *22. Because the Secretary previously determined that 7,948 of the signatures submitted by Plaintiff in support of the recall petition were valid, the district court's order obviously held the potential to require the Secretary to reinstate more than the 776 additional signatures necessary to place the special recall election on the November ballot.

On August 28, 2008, Representative Dillon filed an emergency Rule 60(b) motion for reconsideration challenging the court's conclusions. Representative Dillon's motion also raised a Due Process claim challenging whether the contested signatures could be reexamined without also permitting him time to make additional challenges to their validity under M.C.L. § 168.961a. The Secretary then moved in the district court to stay the injunction, but only if the district court "grant[ed] in whole or in part" Representative Dillon's motion for reconsideration. On August 29, 2008, the district court denied Representative Dillon's 60(b) motion, holding that "Michigan law does not guarantee that state representatives will be given a second opportunity to challenge recall petitions[.]" *Bogaert v. Land*, ___ F. Supp. 2d ___, 2008 U.S. Dist. LEXIS 66481, at *3 (W.D. Mich. Aug. 29, 2008). Having denied Representative Dillon's motion for reconsideration, the district court dismissed the Secretary's conditional motion to stay as moot. *Id.* at *4.

On August 28, 2008, the Secretary filed a Notice of Appeal to this Court. On September 2, Representative Dillon also filed a Notice of Appeal. Neither party, however, moved for expedited consideration. Instead, Representative Dillon and the Secretary filed separate emergency motions in this Court seeking to stay the preliminary injunction. Significantly, however, neither the Secretary nor Representative Dillon first moved in the district court for a stay of the injunction. On September 9, 2008, despite the extraordinary circumstances of this case and the fact that the Secretary's motion specifically explained why moving in the district court first would have been impracticable, this Court, over my objection, denied the motions for failure to comply with Rule 8 of the Federal Rules of Appellate Procedure.

A week later, Plaintiff filed the instant motion seeking to dismiss the pending interlocutory appeals as moot on the grounds that the Secretary now has fully complied with the terms of the district court's preliminary injunction order and, critically, that the Secretary's actions are irrevocable.[4] The Secretary and the Wayne County Intervenors oppose the motion to dismiss, arguing that the effect of the Secretary's certification is not irrevocable until the election is completed and the results are tabulated and certified.

---

[4] Although Plaintiff's motion to dismiss seems to designate that she is moving only in Case No. 08-2130, and in fact was filed in that case only, it is apparent from the parties identified in the caption and the substantive arguments in the motion that Plaintiff seeks dismissal of all three appeals related to this matter, including Representative Dillon's appeal in Case No. 08-2131, and the Wayne County Intervenors' appeal in Case No. 08-2140.

II.

Shortly after the district court denied Representative Dillon's 60(b) motion and the Secretary's conditional motion to stay the injunction, the Secretary began the court-ordered reexamination of the 2,053 previously stricken recall petition signatures.  On September 5, 2008, the Secretary of State's Director of Elections informed Representative Dillon that the reexamination had been completed and that the Secretary had determined that 958 of the 2,053 contested signatures were deemed valid.  Adding these signatures to the previously-certified total, the Secretary concluded that the recall petition is supported by 8,903 valid signatures, 179 more than necessary to place the recall on the November ballot.  Pursuant to M.C.L. § 168.963, the Secretary declared that the recall petition was supported by sufficient signatures, and thus directed that the special recall election of Representative Dillon be placed on the November ballot.

On September 8, 2008, the Secretary certified the November 4, 2008 ballot and submitted it to the 83 county election commissions.  The Wayne County Election Commission then informed Representative Dillon that the special recall election would be placed on the ballot, and solicited his "justification of conduct in office" statement as provided for under M.C.L. § 168.966(2).  After Representative Dillon submitted his justification statement, Plaintiff filed a complaint and emergency motion for a temporary restraining order in Michigan's Third Judicial Circuit Court.  On September 12, 2008, the circuit court granted Plaintiff's motion and ordered 3 sentences be stricken from Representative Dillon's justification statement.  On September 15, 2008, the Wayne County Clerk and Election Commission approved the ballot and submitted it to the printer.  Although the present status of the ballots is unclear from the parties' submissions, the parties seem to agree that, as of September 15, 2008, the printer already had begun printing the ballots.

The question before us now is whether the Secretary's actions to comply with and fulfill the terms of the district court's preliminary injunction order render the appellants' interlocutory appeals from that order moot.[5]  For the reasons set forth below, I am forced to conclude that the appeals are not moot and thus dissent from the majority's order granting Plaintiff's motion to dismiss.

III.

Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, U.S. CONST. art. III § 2, mootness is a jurisdictional question.  The Constitution's case or controversy requirement precludes courts from rendering advisory opinions and confines the jurisdiction of the courts to "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character. . . ."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (citation omitted).  Accordingly, the courts lack jurisdiction to consider any case or issue that has "lost its character as a present, live controversy" and thereby becomes moot.  *Hall v. Beals*, 396 U.S. 45, 48 (1969).  "'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *International Union v. Dana Corp.*, 697 F.2d 718, 720-21 (6th Cir. 1983) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

---

[5]It is important to note that the parties agree, and the majority recognizes, that the case before the district court is not moot because future recall drives may confront the same constitutional issues.  As to the matter now before this Court, however, there is no contention that the interlocutory appeals from the preliminary injunction fall within the "capable of repetition, yet evading review" exception.  *See Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).  Nor would that exception apply here in any event.  That doctrine applies only if there is "a reasonable expectation that the same complaining party would be subjected to the same action again."  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).  While some short-term injunctions might fall within this doctrine, this is not such a case because there is no reasonable basis for expecting that Representative Dillon or the Secretary will be subjected to a similar preliminary injunction before the merits of the underlying controversy are resolved by the district court.

In the context of an appeal from a preliminary injunction order, the Supreme Court has declared that such an appeal becomes moot when "the terms of the injunction . . . have been fully and irrevocably carried out." *University of Texas v. Camenisch*, 451 U.S. 390, 398 (1981). The relevant question here then is whether the terms of the preliminary injunction have been "fully" and "irrevocably" carried out.

The party asserting mootness bears the burden of demonstrating these elements. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001). In fact, the moving party bears a "heavy burden" and must show that "subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and *irrevocably eradicated the effects* of the alleged violation.'" *Id.* at 530-31 (emphasis added) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). *Accord United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (The burden of demonstrating mootness "is a heavy one.").

IV.

Although the parties seem to agree that the facial terms of the district court's order have been fulfilled, appellants dispute whether the Secretary's actions are irrevocable. Specifically, the Secretary and Wayne County Intervenors contend that, even if the certified ballot cannot be revoked or reprinted, the potential for this Court to grant alternative relief precludes dismissing the appeals as moot.

As to the first factor, I agree that the Secretary has fully complied with the terms of the district court's preliminary injunction order. The district court ordered the Secretary to (1) reexamine the signatures submitted in support of the recall petition without the constraints imposed by M.C.L. § 168.957; and (2) if she determined that the petition was supported by sufficient valid signatures, to certify the recall petition and place the special recall election on the November 4, 2008 ballot. There is no real dispute that the Secretary has fulfilled both of these directives.

On September 5, 2008, the Secretary completed the reexamination ordered by the district court. Based on that review, the Secretary determined that the recall petition was supported by enough valid signatures to be placed on the November ballot. The Secretary then certified the ballot and submitted it to the various county election boards. After receiving Representative Dillon's justification statement, the ballot was submitted to the printer. Thus, there seems little doubt that the Secretary already has complied with the facial requirements of the injunction order.

As to the second issue, however, the parties dispute whether the Secretary's actions are "irrevocable." Plaintiff maintains that it is too late to remove the special recall election from the November ballots. Neither the Secretary nor the Wayne County Intervenors contend that the Secretary has the authority or the ability to somehow revoke or otherwise cancel the ballot at this juncture, let alone that there is sufficient time to resubmit an amended ballot to the printers at this late date. Absent that, it appears that the Secretary's compliance with the facial requirements of the district court's order cannot be undone.

Nevertheless, the Secretary and Wayne County Intervenors contend that this Court, should it determine that the preliminary injunction was improperly granted, still has the ability to provide meaningful relief from the *effects* of the Secretary's actions. Given the availability of meaningful relief, the Secretary and the Wayne County Intervenors argue that the Secretary's actions are not irrevocable until after the election has occurred and the results of the special recall election have been tabulated and finalized.

Specifically, the Wayne County Intervenors explain that Wayne County now employs optical scanning equipment to tabulate election results. The County thus claims to be able to program the

tabulation equipment to not count the results of specific ballot issues, in this case, the special recall election of Representative Dillon. In addition, the County also contends that this Court could order notices be posted in voting precincts to warn voters that their votes on the recall will not be counted. Relying on *State of Michigan v. Wayne County Clerk*, 648 N.W.2d 202 (Mich. 2002), the County argues that such at-precinct warnings can be used "to inform prospective voters that [an issue] has been removed from the ballot by court order and that votes on it will not be counted." *Id.* at 205. In addition, there may even be post-election challenge procedures that could provide an avenue for meaningful relief.

Given the potential availability of meaningful relief, and in light of the "heavy burden" that Plaintiff bears, I am forced to conclude that dismissing these appeals as moot would be premature at this juncture. To be clear, my conclusion that dismissal is premature does not imply that I believe the alternative relief options identified by the Secretary and Wayne County Intervenors are warranted, viable, or practical. But considerations regarding the practicality of granting such relief have no bearing on whether the appeals are moot, which is a jurisdictional question, separate and distinct from the propriety of granting any such relief. Therefore, as to the narrow issue before us, I conclude only that the potential availability of such relief demonstrates that further review by this Court can still have a meaningful effect on the parties. *See International Union*, 697 F.2d at 721 (dismissing appeal as moot where parties incorporated injunction terms into settlement agreement because "review of the propriety of the injunction would have no effect on the parties").

This Court and other Circuits repeatedly have held that an appeal from a preliminary injunction ordering an issue or candidate to be placed on or stricken from a ballot becomes moot when the election is completed and the results final. *See, e.g.*, *Operation King's Dream v. Connerly*, 501 F.3d 584, 591 (6th Cir. 2007) ("The Plaintiffs' request for injunctive relief has become moot. Proposal 2 was certified for the ballot; Proposal 2 was included on the ballot; the November 2006 election took place; the Michigan voters approved Proposal 2; and Michigan's constitution was accordingly amended. Simply put, the opportunity to keep Proposal 2 off the November 2006 general election ballot has long since passed."); *Padilla v. Lever*, 463 F.3d 1046, 1049 (9th Cir. 2006) ("The plaintiffs['] . . . claim for injunctive relief [preventing the election] has become moot. The recall election has occurred, and the term of office filled by that election has expired."); *Gjersten v. Bd. of Election Comm'rs*, 751 F.2d 199, 202 (7th Cir. 1984) ("[I]f we now order the injunction vacated, as the defendants ask us to do, it will be too late to take the plaintiffs' names off the ballot and run the primary without them, as the primary is over and done with, and the defendants do not ask that it be ordered rerun."). As these cases demonstrate, an appeal from a preliminary injunction under these circumstances becomes moot *after* the election has occurred and the results have been finalized. Plaintiff has offered no authority—and I am aware of none and the majority certainly points to none—that suggests that an appeal from a preliminary injunction in these circumstances becomes moot *before* the election occurs and where meaningful relief is potentially available.

The fact that the election has yet to occur presents a unique situation where the Secretary has complied with the facial requirements of the district court's order, and yet meaningful relief may still be available. The fundamental question is whether these alternative means of relief could provide meaningful relief to the parties in the event that the Court determines that the preliminary injunction was improperly granted. It seems apparent that notifying voters that the special recall election has been stricken from the ballot and not tabulating election results would effectively nullify the Secretary's compliance with the district court's order. Because relief remains available, I must conclude that the appeals are not moot. *See Rice*, 404 U.S. at 246 (mootness arises only where the court's resolution of the questions presented "cannot affect the rights of litigants").

Simply put, the majority's finding of mootness is based on an overly restricted view of the mootness doctrine, not to mention premature guesswork about the future course of these appeals.

As this Court has stated, an appeal becomes moot only where subsequent events "have completely and irrevocably eradicated *the effects* of the alleged violation." *City of Parma*, 263 F.3d at 530-31. To dismiss these appeals simply because the Secretary has complied with the facial requirements of the order, even though the suggested alternatives may provide meaningful relief from *the effects* of those actions, is contrary to settled precedent. And to do so based on nothing more than mere supposition that the parties will not seek to expedite the briefing schedule is premature at best.

At a minimum, the Court should request further briefing on the proposed relief alternatives suggested by the Secretary and the Wayne County Intervenors, or at least advise appellants that we are inclined to dismiss the case as moot unless they request expedited consideration forthwith. Such an order is well within this Court's inherent authority. *See, e.g.*, *Professional Air Traffic Controllers Org. v. Fed. Labor Relations Auth.*, 685 F.2d 547, 556 (D.C. Cir. 1982) ("In recognition of the urgency of the case and the public interest in a prompt disposition, the court ordered *sua sponte* expedited briefing and oral argument."). As Justice Marshall noted in dissent in *Honig v. Students of California School for Blind*, 471 U.S. 148 (1985) (per curiam):

> Although I agree with the majority that a case such as this could be moot if the full burden imposed by the preliminary injunction has passed, it is not at all clear that that is the situation here. If this case is moot, the facts making it moot occurred subsequent to the Court of Appeals decision, and so do not appear on the record. . . . Since the Court has not requested any supplemental information or argument from the parties, the Court is determining that the case is moot without a clear understanding of the facts of the case or their precise legal implications for the parties. I cannot accept that the Court can simply assume, as a factual matter, that mootness exists. We should inform the parties of our suspicion as to mootness and allow briefing on the issue. Absent this procedure, I dissent.

*Id.* at 150 (Marshall, J., dissenting). Such an approach seems all the more appropriate here where the basis of the dismissal order seems to hang on appellants' failure to request expedited briefing and the possibility of alternative relief has not been fully briefed by the parties. For the majority to conclude that these appeals are moot without giving due consideration to these issues is irresponsible. Therefore, I respectfully dissent.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk